IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00211-MSK-MEH

BRILL GLORIA Haus- und Gartengerate GmbH,

    Plaintiff,
v.

SUNLAWN, INC, and
TERRY JARVIS,

    Defendants.

___

**RECOMMENDATION ON PLAINTIFF'S MOTION
FOR ENTRY OF DEFAULT JUDGMENT**
___

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Motion of Plaintiff Brill Gloria for Entry of Default Judgment Against Defendants Sunlawn, Inc. and Terry Jarvis, pursuant to Fed. R. Civ. P. 55(b) and filed by Defendant Brill Gloria ("Motion") [filed June 24, 2008; doc. #17], subsequent to Clerk's Entry of Default [doc. #16]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R 72.1.C, the Motion has been referred to this Court for recommendation. The Court finds that Defendant has failed to diligently defend this action, and therefore recommends that, for the reasons stated herein, the Motion be **granted**, and that the District Court enter a default judgment against Defendant Sunlawn for $320,575.05.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

## BACKGROUND

Plaintiff Brill Gloria is a German entity that manufactures and exports lawnmowers and other lawn-care equipment. Doc. #4 ¶ 1. Defendant Sunlawn, Inc. ("Sunlawn") is a Colorado corporation that markets and sells lawnmowers and equipment in the United States, and Defendant Terry Jarvis is its president and chief executive officer. *Id.* ¶ 2-3. Plaintiff alleges that on October 11, 2005, Defendants placed an order with Plaintiff for 8,000 lawnmowers at a contract price of €420,763.00. *Id.* ¶ 6, Doc. #4-2 at 3. On September 24, 2006, Defendants placed another order with Plaintiff for 2,400 additional mowers at a contract price of €130,065.60. Doc. #4 ¶ 7, Doc. #4-3 at 3. In accordance with the purchase orders, Plaintiff shipped a total of ten shipments of lawnmowers to a warehouse in Indiana. Doc. #4 ¶ 9. Plaintiff alleges that Defendants only paid for five of those shipments, leaving an unpaid sum of €256,639.18. Doc. #4 ¶ 10, Doc. #4-4. In addition to these payments, Plaintiff claims that Defendants had four other open invoices with Plaintiff, with a sum of €2,886.27 owed to Plaintiff. Doc. #4 ¶ 11, Doc. #4-5. Altogether, Plaintiff alleges that Defendants owe a debt of €259,525.45 to Plaintiff. Doc. #4 ¶ 12. Plaintiff further claims that the parties had previously agreed to fix the currency exchange rate at $1.15 per Euro and equally split any difference from the actual exchange rate, as determined by the date of payment. Doc. #4 ¶ 13, Doc. #4-6 at 7. Plaintiff alleges that at the time it retained counsel in the United States to file the

---

recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

instant action, the actual exchange rate was $1.49 per Euro.[2] Based on the alleged formula, Plaintiff claims that Defendants owe it $342,573.59.

To recover the money owed, Plaintiff filed a lawsuit against Defendant Sunlawn, Inc., in this Court on January 31, 2008. Doc. #1. It amended its complaint on February 2, 2008, adding Defendant Terry Jarvis and alleging breach of contract, unjust enrichment, and joint and several liability. Doc. #4 at 15-28. Service was effectuated on both Defendants on February 2, 2008 via Sandra Jarvis, wife of Defendant Terry Jarvis and registered agent of Defendant Sunlawn, Inc. Doc. #17 ¶ 4-6, Doc. #17-2. Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, Defendants' answers to the Amended Complaint were due on or before March 3, 2008. Fed. R. Civ. P. 12(a), Doc. #17 ¶ 5-7. When neither Defendant made any sort of appearance or responsive pleading, Plaintiff moved for Entry of Default as to both Defendants on June 19, 2008. Doc. #15. Subsequent to the Clerk's Entry of Default as to both Defendants [Doc. #16], Plaintiff's moved for Default Judgment against both [Doc. #17.] To date, neither Defendant has made an appearance in this Court.

## DISCUSSION

**I.     Jurisdiction**

As a preliminary matter, the Court must verify that it has jurisdiction over this matter. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).

---

[2] Plaintiff's complaint mistakenly alleges that the exchange rate when it retained counsel was 1.49 Euros to 1.00 Dollar, not 1.49 Dollars to 1.00 Euro. Doc. #4 ¶ 14.

3

In determining whether it has personal jurisdiction, the Court must address the adequacy of the service of process on Defendants. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (per curiam) ("default judgment subject to attack as void for failure to serve the defendant."); *Mason v. Genisco Tech. Corp.,* 960 F.2d 849, 851-52 (9th Cir.1992) (finding that where a plaintiff "failed to serve [defendant] properly . . . the default judgments [wa]s void"). "An individual . . . may be served . . . by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of residence with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e). "A domestic or foreign corporation must be served . . . by delivering a copy of the summons and complaint to . . . any agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h).

Here, the Court finds sufficient information to establish personal jurisdiction over the Defendants. Defendant Sunlawn is a Colorado corporation, and Defendant Jarvis is a resident of Colorado. Based on the Motion for Entry of Default Judgment, including Exhibits A and B, it appears that the Complaint was served on Sandra Jarvis, who is both the wife of Defendant Terry Jarvis and registered agent of Defendant Sunlawn, Inc. Service was effectuated on February 10th, 2008 at 325 Garfield Street, Fort Collins, Colorado 80524, which is alleged to be the home address and principal office of Defendants. Therefore, with the Complaint having been properly served, Plaintiff has satisfied the jurisdictional requirements necessary to obtain a default judgment.

## II.     Standard of Review for Default Judgment

Default judgment may enter against a party who fails to appear or otherwise defend pursuant to Fed. R. Civ. P. 55. A defendant who fails to answer, plead, or otherwise properly defend an action is deemed to have admitted the factual allegations of the complaint as true. *Dundee Cement*

*Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equipment Sales, Inc.,* 2003 WL 437762 (D. Colo. 2007). Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, 2008 WL 576245 (D. Colo. 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., Ltd. P'ship v. Smith,* 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("[U]pon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## III. Analysis

### A. Breach of Contract Claim

To recover on a breach of contract claim in Colorado, a plaintiff must prove the following elements: (1) a contract existed between the parties; (2) performance by the plaintiff; (3) failure to perform the contract by the defendants; and (4) resulting damage to the plaintiff. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Taking the factual allegations of the complaint as true, I find that the Plaintiff has sufficiently

5

proven the elements of a breach of contract. First, Plaintiff alleges that a contract existed between the parties. Doc. #4 ¶ 16. Plaintiff claims that Defendants placed two different orders with Plaintiff for 10,400 lawn mowers at a price of €550,828.60 and had owed Plaintiff €2,286.27 under previous contracts. *Id.* ¶¶ 6-8, 11. In support of these allegations, Plaintiff attached copies of two purchasing orders [Doc. #4-2; Doc. # 4-3] that included Defendant Jarvis's signature, and invoices reflecting the unpaid balances [Doc #4-5.] Second, Plaintiff alleges that it made ten shipments of mowers in fulfillment of its contract to a warehouse in Indiana designated by Defendants. Doc. #4 ¶¶ 9-10. Third, Plaintiff alleges that the Defendants failed to perform their part of the contract. *Id.* Specifically, Plaintiff claims that Defendants only partially performed, paying a total of €294,189.42, leaving a balance of €259,525.45 under the contract. *Id.* Finally, Plaintiff claims that this breach of contract has caused it damages. *Id.* ¶ 18. As such, taking these well-pleaded facts to be true, I find that the Plaintiff has sufficiently pled and proven its breach of contract claim.

### B. Unjust Enrichment

A party who has been unjustly enriched generally must make restitution to the other party by returning that party to the position it previously occupied. *Salzman v. Bachrach,* 996 P.2d 1263, 1265 (Colo. 2000). However, a party cannot usually recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter, because the express contract precludes any implied-in-law contract. *Interbank Inv., LLC v. Eagle River Water and Sanitation Dist.* 77 P.3d 814, 815 (Colo. App. 2003). "However, this principle recognizes two exceptions. First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract. Second, a party can recover on a quasi-contract when the 'party will have no right under an enforceable contract.'"

*Id.* (Internal citations omitted).

Plaintiff has sufficiently stated a claim for a breach of express contract. It does not seek to enforce rights that fall outside of that contract, nor does it contend that it does not have any rights under that contract. Therefore, I find that Plaintiff's claim for unjust enrichment is precluded by its express contract claim and should be denied.

### C. Joint and Several Liability

Plaintiff also brings a claim of joint and several liability, seeking to hold Defendant Jarvis and Defendant Sunlawn equally liable for their actions. In essence, Plaintiff seeks to pierce Sunlawn's corporate veil to obtain a judgment against Defendant Jarvis in his personal capacity. In Colorado, piercing the corporate veil requires courts to engage in a three-step analysis: (1) whether the corporate entity is the alter ego of the shareholder; (2) whether justice requires preventing the corporate fiction from being used to perpetuate a fraud or defeat a rightful claim; and (3) whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the entity. *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006). A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met. *Contractors Heating & Supply Co. v. Scherb,* 432 P.2d 237, 239 (1967). The court must first inquire whether the corporate entity is the alter ego of the shareholder. Only then will actions ostensibly taken by the corporation be considered acts of the shareholder. An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Krystkowiak v. W.O. Brisben Co., Inc.,* 90 P.3d 859, 867 n.7 (Colo. 2004) (internal quotations omitted) (quoting *Gude v. City of*

*Lakewood,* 636 P.2d 691, 697 (Colo. 1981)).

In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a mere shell, (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for non-corporate purposes. *In re Phillips*, 139 P. 3d at 644. These factors reflect the underlying principle that the court should only pierce the veil when the corporate form has been abused.

Here, the only information that Plaintiff has presented that Defendant Sunlawn is the alter ego of Defendant Jarvis is that (1) Jarvis signed a purchase order without identifying his position with Sunlawn; (2) Jarvis never made a distinction between himself and Sunlawn; (3) Sunlawn's listed address is Jarvis's home address; and (4) any benefit that runs to Sunlawn also runs to Jarvis. These undisputed facts are insufficient to demonstrate that Sunlawn is Jarvis's alter ego. Furthermore, because Plaintiff has not alleged that the corporate form was used to perpetuate a fraud, nor has it alleged that it would be equitable to pierce the corporate veil, it will be unable to meet the second and third steps of the analysis. Because the undisputed facts are insufficient to justify piercing the corporate veil, Defendant Jarvis cannot be held personally liable. Therefore, the Court recommends that Plaintiff's third claim for relief be denied.

**D.     Conversion to U.S. Dollars**

If a plaintiff has a cause of action arising in the United States under American law at the time

of breach, then courts apply the "breach day" rule in determining the foreign currency exchange rate at which to value a judgment. *In re Good Hope Chemical Corp.,* 747 F.2d 806, 811 (1st Cir. 1984). Here, Plaintiff alleges that the parties had previously agreed to set the currency exchange rate at $1.15 per Euro and to split the difference between any fluctuations from this rate. Further, Plaintiff's complaint states that the exchange rate at the time it retained U.S. counsel was $1.49 per Euro. Using this exchange rate, Plaintiffs allege that Defendants owe $342,573.59. However, under the breach day rule, Plaintiff can only recover what was owed to it on the day that the Defendants breached the contract. Therefore, it is necessary to compute the debt owed to Plaintiff in U.S. dollars at the time that payment was due. Because the debt spans several different invoices, each with its own terms of payment, it is necessary to calculate the amount covered under each invoice separately. These calculations are represented in the table below.

| Invoice Date | Date Due (Breach day) | Amount Due (in €) | Actual Exchange Rate (in $ / €)[3] | Contract Exchange Rate (in $ / €)[4] | Converted Amount (in $)[5] |
|---|---|---|---|---|---|
| 12/15/05 | 5/14/06 | €647.14 | 1.2826 | 1.2163 | $787.12 |
| 6/13/06 | 11/10/06 | €60,545.38 | 1.2861 | 1.21805 | $73,747.30 |
| 6/16/06 | 11/13/06 | €49,770.00 | 1.2810 | 1.2155 | $60,495.44 |

---

[3]Actual Exchange Rates were determined using the Federal Reserve Bank of New York's Historical Exchange Rates, http://www.ny.frb.org/markets/fxrates/historical/home.cfm (last visited July 31, 2008).

[4]The Contract Exchange Rate reflects the formula from the parties' previous agreement that they would split any difference in rates from their fixed rate of 1.15. Thus, the Contract exchange rate was calculated by averaging the Actual Exchange Rate (as of the date of breach) and the Fixed Exchange Rate (1.15): (Contract Exchange Rate) = ((Actual Exchange Rate) - (Set Exchange Rate–$1.15 / €) / 2) + (Fixed Exchange Rate–$1.15 / €)

[5]Calculated by multiplying the Amount Due by the Contract Exchange Rate.

9

| 11/20/06 | 5/31/07 | €48,774.60 | 1.3453 | 1.24765 | $60,853.63 |
| 11/24/06 | 5/31/07 | €48,774.60 | 1.3453 | 1.24765 | $60,853.63 |
| 12/19/06 | 5/31/07 | €47,582.33[6] | 1.3453 | 1.24765 | $59,366.09 |
| 4/3/07 | 8/31/07 | €131.40 | 1.3641 | 1.25705 | $165.17 |
| 7/30/07 | 12/27/07 | €3,300.00 | 1.4601 | 1.30505 | $4,306.67 |
| Total Amount Owed: | | | | | $320,575.05 |

As such, I recommend that, under the breach day formula, the Court enter Default Judgment against both Defendants in the sum of $320,575.05.

Because the breach of contract claim is a state law claim, the Court applies Colorado state law in determining prejudgment interest issue. In Colorado, the statutory default rate of eight percent for pre-judgment interest applies. Col. Rev. Stat. § 5-12-102. Because various amounts were due at different times, pre-judgment interest runs for each individual amount, as reflected in the separate invoices, from that invoice's due date. Further, post-judgment interest is determined as a matter of federal law at the rate specified in 28 U.S.C. § 1961 as of the date of entry of the judgment.

**CONCLUSION**

Based on the foregoing, and the entire record herein, I do hereby **recommend** that the District Court **grant** Motion of Plaintiff Brill Gloria for Entry of Default Judgment against Defendant Sunlawn, Inc. in the amount of $320,575.05 and **deny** the Motion against Terry Jarvis

---

[6]There are two invoices from December 19, 2006. One is part of the original Order 59, and reflects the remainder of the money owed on the original purchase–€48,774.60. The other reflects a €1192.27 debit for Defendants. This debit is reflected in the total figure for this invoice.

[filed June 24, 2008; doc. #17], as set forth herein.

Dated at Denver, Colorado, this 5th day of August, 2008.

BY THE COURT:


s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge